UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT OWENS,

                     *Plaintiff*,                   **COMPLAINT**

      -against-

COFFEED CORPORATION,
THE LANDING AT NEW LEAF LLC,
COFFEED AT THE MOUNT LLC,
FRANK RAFFAELE,
CATHERINE MOSOMILLO, and
DAVID BARBAG,

                     *Defendants.*

Plaintiff Robert Owens (Plaintiff), through his undersigned counsel, alleges as follows for his Complaint against Defendants Coffeed Corporation, The Landing At New Leaf LLC, Coffeed At The Mount LLC, Frank Raffaele, Catherine Mosomillo and David Barbag (collectively, "Defendants"):

### <u>Introduction</u>

1.     This Complaint asserts claims of unlawful citizenship discrimination and retaliation by Defendants in violation of 42 U.S.C. § 1981 and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101, *et seq.*

## Jurisdiction & Venue

2.     This Court has subject matter jurisdiction over this matter under 42 U.S.C. § 1981, and 28 U.S.C. §§ 1331, 1337 and 1343.

3.     This Court has supplemental jurisdiction over Plaintiff's New York City Human Rights Law claims under 28 U.S.C. §1367, as these claims arise from a common nucleus of operative facts.

4.     Venue is proper in this district under 28 U.S.C. § 1391 because, *inter alia*, most of the complained-of acts occurred in this District.

## The Parties

5.     Plaintiff Robert Owens is an individual residing in the State of New York, County of New York.

6.     Upon information and belief, Defendant Coffeed Corporation is a domestic corporation with its principal place of business located at 37-18 Northern Blvd., Long Island City, NY 11101.

7.     Upon information and belief, Defendant The Landing At New Leaf LLC is and was, since July 28, 2017, a domestic limited liability company established and operated by Defendant Frank Raffaele with its principal place of business located at 46-28 Vernon Blvd., Suite 533, Long Island City, NY 11101.

8.     Upon information and belief, Defendant Coffeed At The Mount LLC is and was, since February 21, 2018, a domestic limited liability company

2

established and operated by Defendant Frank Raffaele with principal places of business at 46-28 Vernon Blvd., Suite 533, Long Island City, NY 11101.

9.     Defendant Frank Raffaele is an individual whose address is not currently known to Plaintiff.

10.     Defendant Catherine Mosomillo is an individual whose address is not currently known to Plaintiff.

11.     Defendant David Barbag is an individual whose address is not currently known to Plaintiff.

12.     When referring to certain employees who are believed to not be legally in the U.S., this Complaint uses their last names and the initials for their first (or first and middle) names.

## Facts

13.     Upon information and belief, at all material times herein Coffeed Corporation was an owner and operator (and continues to be an owner and operator) of New Leaf Restaurant and Bar (the "Restaurant"), located at 1 Margaret Corbin Drive, New York, NY 10040.

14.     Upon information and belief, since it was formed on July 28, 2017, The Landing At New Leaf LLC has also managed the Restaurant.

3

15.     Upon information and belief, since it was formed on February 21, 2018, Coffeed At The Mount LLC has also managed the Restaurant.

16.     Except as otherwise indicated below, the Restaurant was operated by Catherine Mosomillo, CFO David Barbag, and CEO Frank Raffaele.

17.     Upon information and belief, Frank Raffaele is and was at all material times herein an owner and operator of, and the CEO of, Coffeed Corporation, The Landing At New Leaf LLC, and Coffeed At The Mount LLC.

18.     At all material times herein, Frank Raffaele oversaw Catherine Mosomillo and David Barbag's management of the Restaurant.

19.     As detailed below, Frank Raffaele had knowledge of the discriminatory and retaliatory acts alleged herein and failed to remedy or prevent them.

20.     Catherine Mosomillo was the Restaurant's General Manager from sometime before April 2016 until September 2017.

21.     Catherine Mosomillo has been the Restaurant's Director of Events and Catering since sometime before 2016.

22.     Upon information and belief, in early 2018 Catherine Mosomillo acquired an ownership interest in the Restaurant.

23.     At all material times herein except for a roughly four week period in or about September 2017, Catherine Mosomillo hired or approved the hiring of

4

numerous employees, even though they did not possess adequate documentation; fired or approved the firing of certain employees; maintained compensation records; participated in setting employee compensation rates; and, as detailed below, participated in the decision to drastically reduce Plaintiff's hours and give them to F. Felipe ("Felipe").

24.    Upon information and belief, based on statements made by certain employees who are closely associated with Felipe and other circumstantial evidence, Felipe is not legally in the U.S.

25.    At all material times herein, CFO David Barbag also made decisions about when, how, and how much certain employees would be paid, and upon information and belief maintained employee records.

26.    Upon information and belief, CFO David Barbag receives a percentage of the Restaurant's revenues or profits.

27.    CFO David Barbag also participated in the decision, discussed in further detail below, to drastically reduce Plaintiff's hours and give them to someone who, upon information and belief, is not a U.S. citizen and is not legally in the U.S. (Felipe).

28.    Plaintiff Rob Owens has worked at the Restaurant and been employed by Coffeed Corporation since April 2016, and, upon information and belief, has

also been jointly employed by The Landing At New Leaf LLC since July 28, 2017 and Coffee At The Mount LLC since February 2018.

29.    Plaintiff's earnings statements for some pay periods (including the pay periods ending from April 29, 2016 through December 31, 2017, and from April 8, 2018 through April 15, 2018), identified Plaintiff's employer as "COFFEED," with an address of 37-18 Northern Blvd., Long Island City, NY 11101.

30.    Plaintiff's earnings statements for some pay periods (including the pay periods ending from January 7, 2018 through March 25, 2018) identified Plaintiff's employer as "New Leaf," with an address of 1 Margaret Corbin Dr., New York, NY 10040.

31.    Plaintiff's earnings statements for some pay periods (including the pay periods ending April 29, 2018 identified Plaintiff's employer as "LANDING AT NEW LEAF LLC," with an address of 1 Margaret Corbin Dr., New York, NY 10040.

32.    Plaintiff's earnings statements for some pay periods (including the pay periods ending May 13, 2018 identified Plaintiff's employer as "LANDING AT NEW LEAF LLC DBA: COFFEED," with an address of 1 Margaret Corbin Dr., New York, NY 10040.

33.     Upon information and belief, all of the earnings statements issued to Plaintiff include the same phone number:  (347) 706-4696.

34.     Throughout his employment at the Restaurant, Plaintiff worked as a manager and was designated as a "floor manager" in Defendants' payroll system.

35.     As a manager, one of Plaintiff's job duties was to verify the eligibility of new hires and to assist in processing the paperwork needed for new hires to begin working.

36.     To enter a new hire into the payroll system, the payroll software (Paycom) requires entry of the employee's social security number or other legal identifying number.

37.     Defendants often permitted new hires to start work as much as two or more weeks before the new hires submitted documentation as part of the hiring process, and the documents that were submitted often did not appear to be facially genuine.

38.     When the documentation that new hires produced did not appear genuine under all of the facts and circumstances, as was usually the case, Plaintiff added them to the payroll system anyway (as he understood he was required to do), but refused to certify under penalty of perjury that the information listed on the I-9 form was true and correct to the best of his knowledge.

39.     In June 2016 Plaintiff told Catherine Mosomillo "*Audie doesn't have working papers*," and Mosomillo replied, "*I don't care if you give him my ex-husband's social.  We need him.  Just do your job.*"

40.     On another occasion, in or about May 2017, Plaintiff notified Mosomillo that based on the lack of documentation certain new hires did not appear to be in the U.S. legally, and Mosomillo angrily replied "*Do your job or go home.*"

41.     Because they often hired employees before they were able to produce alleged documentation, Defendants were sometimes unable to process a given employee's pay in a timely manner, thereby violating NYLL §191, which requires manual workers to be paid not less than every seven days.

42.     Because they often hired employees before they were able to produce alleged documentation, Defendants sometimes hired workers who, besides not being in the U.S. legally, were under age (e.g., L.B. Ventura, who worked 60-65 hours a week and, according Catherine Mosomillo, was 16 years old).

**Defendants' Decision to Drastically Reduce Plaintiff's Hours**
**and Give Them to Felipe**

43.     During some shifts Felipe (who, upon information and belief, is not legally in the U.S.) works as a server.

44.     During some shifts Felipe works as a manager.

8

45.     When Felipe worked as a server, he received a low hourly wage (usually $10), plus tips.

46.     When Felipe worked as a manager (i.e., when Plaintiff was not working), he was listed in the Restaurant's payroll system as "Floor Manager" and received a higher hourly wage ($20 per hour when working at the Restaurant), plus a share of the tip pool.

47.     It is illegal under New York Labor Law §196-d for managers to receive tips.

48.     From December 2016 to April 2017, and from November 2, 2017 onward, Defendants, upon information and belief due to Felipe's status as a non-citizen who is not legally in the U.S.:  **(A)** assigned Felipe to work two of Plaintiff's manager shifts each week at a lower hourly rate of pay than they paid Plaintiff ($20, instead of $25); **(B)** did not pay Felipe time-and-a-half for overtime, as they did to Plaintiff when he worked overtime, and as the law requires for hourly employees; and **(C)** allowed Felipe's lower $20-per-hour rate as manager with no time-and-a-half for overtime to be illegally supplemented with a share of the wait staff's tips in violation of Labor Law § 196-d.

49.     Plaintiff usually worked four days a week.

50.     Plaintiff's weekly hours worked generally fluctuated somewhat from week to week, but averaged about 38 hours per week through October 2017.

51.     Beginning on November 2, 2017, and continuing to the present, Plaintiff's hours were reduced by close to 50%, such that Plaintiff was only given an average of about 18.65 hours a week of work from November 2017 through May 2018.

52.     Defendants gave Felipe the hours that had been taken away from Plaintiff.

53.     On September 18, 2017, Plaintiff notified Defendants, through then-HR manager and part-owner Abe King, that Felipe was receiving tips while working a manager.

54.     On November 2, 2017 Mosomillo informed Plaintiff that she and David Barbag met and agreed on a new work schedule that involved giving more than half of Plaintiff's work hours to Felipe.

55.     Since then Plaintiff has only been allowed to work on weekends.

56.     Since then the manager shifts that were taken away from Plaintiff were given to Felipe, the main person involved in hiring the Mexicans who work in the kitchen, most, if not all of whom are non-citizens who are not legally in the U.S.

57.     David Barbag, among others, knew Felipe was receiving tips while working a manager because he had to approve each week's final payroll.

58.    On March 13, 2018, Plaintiff emailed a written complaint of discrimination on the basis of citizenship to Defendant Frank Raffaele (Coffeed Corporation's founder, CEO and President), with a "cc" to Giancarlo Coco and Vickie Lee, stating as follows:

> I am respectfully writing to complain about what I see as an ongoing injustice at New Leaf.  Specifically, I don't believe the decision to drastically cut my hours as manager and give them to a non-citizen/alien who's not legally in the U.S. (Felipe) so he can serve as a manager is something the law allows.
>
> Felipe (who I personally like and work well with) is allowed to receive part of the tip pool even when he's working as a manager and receiving a higher hourly rate than the regular servers, which helps make it possible for the Restaurant to pay him a lower hourly rate than me for serving as a manager.
>
> In addition, the drastic cutting of my hours came after my continued refusal to sign off on hiring documents for workers who aren't and who don't appear to be here legally.  Instead of commending me for my refusal to give preferential treatment to new hires who aren't here legally by signing off on false hiring documents, the Restaurant has made disapproving comments and has made me feel like the "skunk at the garden party."
>
> I know most people who come here illegally are decent people who are just trying to provide for their families, and I personally think the law should be changed to give them some type of path to citizenship.  But that hasn't happened yet.
>
> When businesses actively hire non-citizens who are vulnerable, it also often harms African-Americans (like me) and other U.S. citizens who work near the lower end of the wage scale because they're more likely to have their hours scaled back or eliminated in favor of more easily exploitable non-citizens/aliens who aren't here legally.

Even if few people talk about the legal rights of U.S. citizens having their hours scaled back and given to non-citizens/aliens who aren't here legally, I think that what the Restaurant has done to me violates section 1981 of the 1866 Civil Rights Act and the NYC Human Rights Law.

I am respectfully requesting to have my hours restored going forward, to be compensated for the lost wages caused by the reduction in my hours, and to receive other appropriate relief.

Thank you for your attention to this matter, and for considering this request. I would really like to make this work, and I hope you do as well.

Best,

Rob Owens

59.     On March 14, 2018, the day after Plaintiff sent that complaint, he received an email from Catherine Mosomillo falsely insinuating that Plaintiff had wanted to have his schedule reduced, and asking if he was now "up for more days," to which Plaintiff replied "my readiness and commitment to the 40 hours per week we agreed to when I was hired has never changed."

60.     Shortly thereafter, on March 18, 2018, Defendant Frank Raffaele approached Plaintiff and inaccurately told him, in substance, that "All of my employees are audited and legal, and no one in the Company is here illegally."

61.     During that conversation, Raffaele, referring to the issue of Felipe receiving tips while working as manager, also told Plaintiff, in words or substance, that the law allows for certain managers to receive tips.

12

62.    Plaintiff responded, in substance, that he did not know about the whole Company, but that he does know about "New Leaf" because he processes hiring documents.

63.    Raffaele also claimed that Plaintiff's hours had been reduced because it was the slow season.

64.    Frank Raffaele added, in substance, that they love having Plaintiff there and want to get him back to his hours in April, and emphasized that it was not because they did anything wrong, but because they think Plaintiff adds value and is good for the business.

65.    Upon information and belief, Defendants never conducted an investigation of the issues raised in the complaint Plaintiff sent to Frank Raffaele.

66.    Defendants never asked Plaintiff any questions about how he knew the facts alleged in the complaint that he sent to Frank Raffaele.

67.    Upon information and belief, on April 17, 2018 Defendants, acting through Defendant Mosomillo, attempted to cover their tracks by causing, without Plaintiff's prior knowledge, an email to be sent from *Plaintiff's personal email address* (rorobowens@gmail.com) to Felipe stating as follows:

> Hola,
>
> The payroll was paid through April 4
>
> Felipe you cannot be paid as a manger [sic] at $20.00 per hour and receive tips, you must clock in as a admin at the $12.00 rate

when you are waiting tables, it is against the labor law to be a manager and get tips.

We need to discuss your schedule tomorrow and figure out what shifts you manage at $20.00 per hour and which ones as admin at $12.00 per hour.

68.     After learning about this email, Plaintiff called Catherine Mosomillo's administrative assistant (Tania) and asked her if he had left his email open because he just received a copy of an email that was just sent from his personal email address to Felipe.

69.     Tania told Plaintiff his email wasn't open, and that Cathy (Mosomillo) sent it.

70.     Upon information and belief, never before and never since had Defendants used Plaintiff's work email address to send an email.

71.     That same day (April 17, 2018), Plaintiff forwarded the email to Catherine Mosomillo with a message stating:  *"Hi Cathy, The below email indicates it came from me, however I did not send it.  Please advise. Best, Rob"*.

72.     Mosomillo replied that same day via email:

Thank you Rob,

Regards,

Cathy Mosomillo
Director of Events and Catering
cathy@coffeednyc.com
917 701-9200

14



73.     The email that Defendants caused to be sent under Plaintiff's name from Plaintiff's personal email address contradicted Defendants' earlier claim to Plaintiff that there was nothing improper about how Felipe was being compensated when working as a manager.

74.     Catherine Mosomillo's knowledge of Plaintiff's written complaint to CEO Frank Raffaele shortly after it was sent can be inferred by, *inter alia*:  **(A)** Mosomillo's email to Plaintiff falsely indicating, just one day after he submitted his written complaint to CEO Raffaele, that it was *Plaintiff* who had requested to be given reduced hours; and **(B)** Mosomillo's decision to surreptitiously send an email to Felipe from *Plaintiff's* email address addressing the Restaurant's illegal payment of tips to him while working manager shifts.

75.     Mosomillo's and Barbag's knowledge of Plaintiff's written complaint to CEO Frank Raffaele shortly after it was sent can also be inferred by, *inter alia*, the Restaurant's duty to investigate Plaintiff's complaint, *Watts v. N.Y.C. Police Dep't*, 724 F. Supp. 99, 108 (S.D.N.Y. 1989); *Amin v. Quad Graphics*, 929 F. Supp. 73, 78 (N.D.N.Y. 1996), which the Restaurant could not have even

pretended carry out without asking Mosomillo and Barbag about whether much of Plaintiff's work was indeed taken away and given to an employee (Felipe) not legally in the U.S. *Pilgrim v. McGraw-Hill Cos.*, 599 F. Supp. 2d 462, 481 (S.D.N.Y. 2009) ("evidence that there was general corporate knowledge about Curtis' complaints" is sufficient to impute such knowledge to the hiring manager, even though the hiring manager denied having any such knowledge).

76.     The reason given by Frank Raffaele for the drastic reduction in Plaintiff's hours (i.e., that it was the slow season) is unworthy of credence because: **(A)** Felipe continued to receive full-time work from Defendants during that period; **(B)** Plaintiff's worked an average of about 32 hours a week during the corresponding "slow" period from the prior year (November 2016 through May 2017), which was about 71% more hours than the roughly 18.65 hours a week on average that Plaintiff was given for the period November 2017 through May 2018, despite comparable levels of business and staffing needs during the two periods; and **(C)** the day after Plaintiff complained to CEO Raffaele, Mosomillo implied that Plaintiff's hours had been reduced because Defendants thought he wanted to work fewer hours; and **(D)** Defendants, through CEO Raffaele, indicated that Plaintiff's hours would be restored in April 2018, but that never happened.

77.     Plaintiff was never made whole for his losses due to Defendants'
decision to cut his hours by approximately 50% and to keep those drastically
reduced hours even after receiving Plaintiff complained about it in writing.

78.     Despite Plaintiff's written request to be restored to his full-time
schedule, Plaintiff was never given back his full-time schedule.

**First Cause of Action**

**Citizenship Status Discrimination in Violation of 42 U.S.C. § 1981**

79.     Plaintiff incorporates the Complaint's preceding paragraphs herein by
reference.

80.     42 U.S.C. § 1981, which applies to at-will employment arrangements,
*Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68 (2d Cir. 2000),
provides, *inter alia*, that "[a]ll persons" shall have the same right to "the making,
performance, modification, and termination of contracts, and the enjoyment of all
benefits, privileges, terms, and conditions of the contractual relationship" as is
enjoyed by white citizens, and that such right is "protected against impairment by
nongovernmental discrimination[.]"

81.     "Section 1981 does not exempt private citizenship discrimination
from its coverage, nor is there evidence in the legislative history that Congress did
not intend to prohibit private citizenship discrimination." *Cheung v. Merrill Lynch,*

17

*Pierce, Fenner & Smith*, 913 F. Supp. 248, 251 (S.D.N.Y. 1996).  "Accordingly,

section 1981 must be construed to prohibit private discrimination on the basis of

citizenship." *Id.*

82.    Because Section 1981 protects "all persons," it proscribes citizenship

discrimination against American citizens.  *Jimenez v. Servicios Agricolas Mex,*

*Inc.*, 742 F. Supp. 2d 1078, 1086-1087 (D.Ariz. 2010) (surveying divided case law,

and stating: "As [the Supreme Court in *McDonald v. Santa Fe Trail Transp. Co.*,

427 U.S. 273 (1976)] concluded that the plain language of Section 1981 prohibits

discrimination against persons of all races, and not only non-whites, it is axiomatic

that Section 1981 prohibits discrimination against persons of all citizenships and

not only non-Americans.").

83.    Defendants discriminated against Plaintiff based on his citizenship

status by giving approximately 50% of his work hours to a non-citizen who is not

legally in the U.S., as further described in Plaintiff's written complaint to CEO

Frank Raffaele.

84.    Defendants' discriminatory conduct as aforesaid on the basis of

citizenship deprived Plaintiff of an equal right to the making, performance and

modification of his at-will employment contract, and to the benefits, privileges,

terms, and conditions of said contractual relationship.

85.    Defendants' discriminatory conduct as aforesaid on the basis of

citizenship deprived Plaintiff of an equal right under 42 U.S.C. § 1981 to the

performance of his at will employment contract, and to the benefits, privileges,

terms, and conditions of said contractual relationship.

86.     Such intentionally discriminatory conduct is not only unfair to U.S.

citizens (in particular, U.S. citizens at the lower end of the wage scale, comprised

disproportionately of African-Americans), but also to non-citizens who are not in

the U.S. legally because they are, or are perceived as being, more vulnerable due to

their immigration status, and, as a result, are often subjected to illegal or

substandard working conditions.

87.     "[I]ndividuals may be held liable under § 1981." *Whidbee v.

Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000).

88.     Defendant Mosomillo is subject to individual liability because, *inter

alia*, she actively discriminated against Plaintiff for refusing to give preferential

treatment to non-citizens who are not legally in the U.S. and jointly decided with

Barbag to drastically reduce Plaintiff's work hours and to give those hours to a

non-citizen who is not legally in the U.S. (Felipe).

89.     Defendant Barbag is subject to individual liability because, *inter alia*,

he jointly decided with Mosomillo to drastically reduce Plaintiff's work hours and

to give those hours to a non-citizen who is not legally in the U.S. (Felipe).

90.     Defendant Raffaele is subject to individual liability because he was

notified in writing of the ongoing discrimination that was taking place, and of the fact that it violated Section 1981, but, despite his status as Coffeed Corporation's CEO and President, failed to remedy such discrimination or prevent it from continuing. *Amin v. Quad Graphics*, 929 F. Supp. 73, 78 (N.D.N.Y. 1996) (denying individual defendants' summary judgment motion in § 1981 case because "the element of personal involvement may be satisfied by proof that a supervisor had knowledge of alleged acts of discrimination and failed to remedy or prevent them"); *Hicks v. IBM*, 44 F. Supp. 2d 593, 599 (N.D.N.Y. 1999) ("Plaintiff alleges that Defendants Walker, Sinnott and Frase were aware of the alleged hostile work environment and failed to take adequate steps to remedy the situation. The motion to dismiss the § 1981 claim against these Defendants is denied.").

91.    As a result of Defendants' unlawful conduct as aforesaid, Plaintiff's income has been dramatically reduced, and he has experienced the type of mental anguish, embarrassment, frustration, disappointment, despair and disruption of his peace of mind as a result of Defendants' conduct which most reasonable persons would have suffered under like circumstances.

92.    As a result of the foregoing, Plaintiff is entitled to recover all appropriate damages and other appropriate relief, including, *inter alia*, compensatory damages and an amount equal to the value of the compensation he would have earned from Defendants had his employment not been interfered with,

and an order restoring him to his full-time schedule.

93.     In addition, punitive damages are appropriate under Section 1981 where, as here, "the defendant has engaged in intentional discrimination 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *Santos v. Costco Wholesale, Inc.*, 271 F. Supp. 2d 565, 575-576 (S.D.N.Y. 2003), citing 42 U.S.C. § 1981a(b)(1).

94.     Moreover, Defendants will not be able to rely on the punitive damages "affirmative defense" recognized in *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 529-30 (1999) because instead of making a "good faith efforts to enforce an antidiscrimination policy" with respect to the type of unlawful discrimination at issue, Defendant Mosomillo effectively threatened to fire Plaintiff, after which Defendants drastically reduced Plaintiff's work schedule by approximately 50% and continued depriving Plaintiff of full-time work even after he wrote a complaint spelling out how and why Defendants' conduct was unlawful.

## Second Cause of Action

### Citizenship Status Discrimination in Violation of the New York City Human Rights Law

95.     Plaintiff incorporates the Complaint's preceding paragraphs herein by reference.

96.     Coffeed Corporation has and had at all material times herein at least four persons in its employ.

97.     Coffeed Corporation is and was at all material times herein:  **(A)** a "person" under NYCHRL § 8-102(5); **(B)** an "employer" under NYCHRL § 8-102(1); **(C)** a "place or provider of public accommodation" under NYCHRL § 8-102(9); and **(D)** a "covered entity" under NYCHRL § 8-102(17).

98.     Upon information and belief, the Landing At New Leaf LLC has and had at all material times during its existence at least four persons in its employ.

99.     The Landing At New Leaf LLC is and was at all material times during its existence:  **(A)** a "person" under NYCHRL § 8-102(5); **(B)** an "employer" under NYCHRL § 8-102(1); **(C)** a "place or provider of public accommodation" under NYCHRL § 8-102(9); and **(D)** a "covered entity" under NYCHRL § 8-102(17).

100.    Upon information and belief, Coffee At The Mount LLC has and had at all material times during its existence at least four persons in its employ.

101.    Coffee At The Mount LLC is and was at all material times during its existence:  **(A)** a "person" under NYCHRL § 8-102(5); **(B)** an "employer" under

NYCHRL § 8-102(1); **(C)** a "place or provider of public accommodation" under NYCHRL § 8-102(9); and **(D)** a "covered entity" under NYCHRL § 8-102(17).

102.   Frank Raffaele is and was at all material times herein:  **(A)** a "person" under NYCHRL § 8-102(5); **(B)** an "employer" under NYCHRL § 8-102(1) and/or an "employee" or "agent" of Plaintiff's employer under NYCHRL § 8-107(1); and **(C)** an "aid[er]" and "abet[tor]" under NYCHRL § 8-107(6).

103.   Catherine Mosomillo and David Barbag are and were at all material times herein:  **(A)** "persons" under NYCHRL § 8-102(5); **(B)** "employees" or "agents" of Plaintiff's employer under NYCHRL § 8-107(1); and **(C)** "aid[ers]" and "abet[tors]" under NYCHRL § 8-107(6).

104.   "[The NYCHRL] prohibit[s] discrimination against American citizens."  *Gallo v. Alitalia - Linee Aeree Italiane - Societa Per Azioni*, 585 F. Supp. 2d 520, 547 (S.D.N.Y. 2008) (McMahon, J.), citing N.Y.C. Admin. Code § 8-107(1)(a).

105.   The NYCHRL also "proscribes aiding and abetting discrimination and aiding and abetting retaliation against employees who oppose discriminatory practices." *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 655 (E.D.N.Y. 2015) (citing N.Y.C. Admin. Code § 8-107(6)).

106.   All of the Defendants are liable for citizenship discrimination as

aforesaid.

107.    The individual Defendants are additionally liable for aiding and

abetting that discrimination. *Henry-Offor v. City Univ. of N.Y.*, 2012 U.S. Dist.

LEXIS 84817, *17, n.7, 2012 WL 2317540, n.7 (S.D.N.Y. 2012).

108.    As a result of the foregoing, Plaintiff is entitled to recover all

appropriate damages and other appropriate relief, including, *inter alia*,

compensatory damages and an amount equal to the value of the compensation he

would have earned from Defendants had his employment not been interfered with,

and an order restoring him to his full-time schedule, as well as punitive damages,

all in amounts to be determined at trial.


### Third Cause of Action

### Unlawful Retaliation in Violation of 42 U.S.C. § 1981

109.    Plaintiff incorporates the Complaint's preceding paragraphs herein by

reference.

110.    This cause of action is pleaded in the alternative to the extent it is

inconsistent with Plaintiff's first or second causes of action.

111.    42 U.S.C. § 1981 prohibits retaliation against those who oppose

discrimination prohibited under 42 U.S.C. § 1981. *Zheng v. GE*, 2016 U.S. Dist.

LEXIS 4307, *64 (E.D.N.Y. 2016), quoting *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2529 (2013).

112.   Defendants, acting through Catherine Mosomillo in her March 14, 2018 email to Plaintiff, indicated that they were willing to restore Plaintiff's full-time hours.

113.   Defendants, acting through CEO Frank Raffaele in his face-to-face discussion with Plaintiff on March 18, 2018, indicated that Defendants would restore Plaintiff's full-time employment, but not until sometime in April 2018.

114.   Accordingly, Defendants, acting through Mosomillo and Raffaele, effectively admitted that there was no reason Plaintiff shouldn't be restored to full-time employment, and that Plaintiff's full-time employment would be restored.

115.   There was never any reason for Defendants not to restore Plaintiff to full-time employment right away, as requested in his complaint letter.

116.   Upon information and belief, Defendants, through Raffaele, said that Plaintiff's reinstatement to full-time employment would be delayed until some unspecified point in April in order to dissuade Plaintiff from taking legal action.

117.   Defendants' refusal to reinstate Plaintiff as a full-time employee was never altered.

118.   Upon information and belief, Defendants allowed their refusal to reinstate Plaintiff to full-time employment to continue indefinitely in order to make Plaintiff feel discouraged and demoralized.

119.   April came and went without Defendants having reinstated Plaintiff as a full-time employee, and Plaintiff remains a part-time employee to this day.

120.   Plaintiff's discrimination complaint weighed so heavily on Defendants' minds that Defendants, eager to preserve their ability to deny knowledge that the lower wages of a manager not legally in the U.S. (Felipe) were being illegally supplemented with a share of the wait staff's tips, accessed Plaintiff's personal email without authorization and used it to notify Felipe that he could no longer receive a share of the tip pool while working as a manager.

121.   The underlying facts and sequence of events clearly show that Defendants refused to restore Plaintiff to full-time employment and, despite representing that they would restore him to full-time employment, never restored him to full-time employment because he filed a clearly-worded complaint with CEO Raffaele alleging unlawful discrimination.

122.   As a matter of law, Defendants' retaliatory conduct as aforesaid constituted a materially adverse action.  *See*, *e.g.*, *Kohutka v. Town of Hempstead*, 994 F. Supp. 2d 305, 314 (E.D.N.Y. 2014) ("allegations that [plaintiff] was being denied overtime pay, even on one occasion, may be sufficient to deter a similarly

situated individual of ordinary firmness from exercising his or her constitutional rights so as to constitute an adverse employment action."); *Summerlin v. Almost Family, Inc.*, 2014 U.S. Dist. LEXIS 35446, at *11 (D. Conn. Mar. 17, 2014) (denying summary judgment on plaintiff's claim that defendant retaliated against her by not giving her a full-time position); *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995) (district court abused its discretion in denying Plaintiff the opportunity to supplement her Complaint with a claim for retaliation in failing to rehire her after she received a right to sue letter from the EEOC and subsequently initiated a suit against Defendants for pregnancy discrimination in violation of Title VII and New York State Human Rights Law).

123.   Defendants' retaliatory conduct as aforesaid deprived Plaintiff of an equal right to the making, performance, modification, and termination of his at will employment contract, and to the benefits, privileges, terms, and conditions of said contractual relationship, in violation of section 1981.

124.   As a result of Defendants' retaliatory conduct as aforesaid, Plaintiff is entitled to, *inter alia*, the types of damages as set forth herein, including, without limitation, punitive damages, and injunctive relief.

## Fourth Cause of Action

## Unlawful Retaliation in Violation of the New York City Human Rights Law

125.   Plaintiff incorporates the Complaint's preceding paragraphs herein by reference.

126.   As a result of the foregoing, Defendants are liable for unlawful retaliation against Plaintiff, and the individual Defendants are additionally liable for aiding and abetting that unlawful retaliation.

127.   As a result of Defendants' retaliatory conduct as aforesaid, Plaintiff is entitled to, *inter alia*, the types of damages as set forth herein, including, without limitation, punitive damages, and injunctive relief.

## Fifth Cause of Action

## Violations of New York Labor Law § 195

128.   Plaintiff incorporate the Complaint's preceding paragraphs by reference.

129.   New York Labor Law ("NYLL") § 195.1(a) provides that "Every employer shall":

> provide his or her employees, in writing…, at the time of
> hiring, a notice containing the following information: the rate or
> rates of pay and basis thereof, whether paid by the hour, shift,
> day, week, salary, piece, commission, or other; allowances, if

28

any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary. Each time the employer provides such notice to an employee, the employer shall obtain from the employee a signed and dated written acknowledgement, in English and in the primary language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years. Such acknowledgement shall include an affirmation by the employee that the employee accurately identified his or her primary language to the employer, and that the notice provided by the employer to such employee pursuant to this subdivision was in the language so identified or otherwise complied with paragraph (c) of this subdivision, and shall conform to any additional requirements established by the commissioner with regard to content and form. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the notice must state the regular hourly rate and overtime rate of pay;

130.     NYLL § 195(3) provides, among other things, that "Every employer shall":

furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's

29

minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked. For all employees paid a piece rate, the statement shall include the applicable piece rate or rates of pay and number of pieces completed at each piece rate. Upon the request of an employee, an employer shall furnish an explanation in writing of how such wages were computed

131.   NYLL § 198 further provides, among other things, as follows:

1-b. If any employee is not provided within ten business days of his or her first day of employment a notice as required by subdivision one of [Labor Law § 195.1], he or she may recover in a civil action damages of [$50] for each work day that the violations occurred or continue to occur, but not to exceed a total of [$5,000], together with costs and reasonable attorney's fees. ***

1-d. If any employee is not provided a statement or statements as required by [Labor Law § 195.3], he or she shall recover in a civil action damages of [$250] for each work day that the violations occurred or continue to occur, but not to exceed a total of [$5,000], together with costs and reasonable attorney's fees. ***

132.   Defendants failed to provide within ten business days of Plaintiff's first day of employment a notice as required by NYLL § 195.1(a), and failed for approximately 21 months to provide a notice containing even part of the information required thereunder by NYLL § 195.1(a).

133.   Accordingly, Defendants are liable for the statutory maximum ($5,000) under NYLL § 198(1-b).

134.   In addition, the earnings statements provided by Defendants did not contain all of the information required by NYLL § 195(3).

135.   Among other things, few if any of the earnings statements provided by Defendants contained the correct name of Plaintiff's employer.

136.   Accordingly, Defendants are also liable for the statutory maximum ($5,000) under NYLL § 198(1-d).

## Jury Trial Demand

Plaintiff demands a trial by jury with respect to all issues so triable on his first, second, third and fourth causes of action.

**WHEREFORE**, Plaintiff respectfully requests judgment in his favor in an amount to be determined at trial, together with statutory attorney's fees, costs, disbursements and prejudgment interest, and such other and further relief as may be just.

Dated:        New York, New York
              May 31, 2018                    Law Offices of Scott A. Lucas

                                              By:    */S/ Scott A. Lucas*
                                                     Scott A. Lucas (SL-6316)
                                                     250 Park Avenue, Suite 2020
                                                     New York, New York 10177
                                                     (212) 983-6000
                                                     *Attorneys for Plaintiff*
                                                     *Robert Owens*

31