UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
ROBERT OWENS,

Plaintiff,

Civil Action No.:
18-CV-4837 (LGS)

-against-

COFFEED CORP., THE LANDING AT NEW LEAF LLC, COFFEED AT THE MOUNT LLC, FRANK RAFFAELE, CATHERINE MOSOMILLO, and DAVID BARBAG,

Defendants.
---------------------------------------------------------------x

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT OF PLAINTIFF ROBERT OWENS**

---

Allison E. Ianni, Esq.
GOLDBERG SEGALLA LLP
711 Third Ave., Suite 1900
New York, New York 10017
T: 516.281.9840
F: 516.281.9801

*Attorneys for Defendants*
*Coffeed Corp., The Landing at New Leaf LLC,*
*Coffeed At The Mount LLC,*
*Frank Raffaele, Catherine Mosomillo, and*
*David Barbag*

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ....................1

II. PERTINENT ALLEGATIONS IN THE COMPLAINT ....................2

III. LEGAL ARGUMENT ....................4

A. The Applicable Motion to Dismiss Standard ....................4

B. Plaintiff Does Not State A Plausible Claim Under Section 1981 ....................5

*1. Section 1981 Does Not Prohibit Discrimination Based on American Citizenship* ....................5

*2. Plaintiff's Section 1981 Claim Also Fails Because He Has Not Plausibly Alleged Purposeful Discrimination Based On His Status As An American Citizen* ....................8

C. Owens Fails To State A Plausible Claim of Citizenship Discrimination Under the NYCHRL ....................10

D. Owens Fails To Allege Plausible Claims of Retaliation ....................10

E. Owens Fails To Allege Facts To State A Plausible Section 1981 Claim Against the Individual Defendants ....................12

F. Plaintiff Fails to Plausibly Allege That The Individual Defendants Violated The NYLL ....................12

G. The Court Should Decline To Exercise Supplemental Jurisdiction Over Plaintiff's Remaining Claims and Dismiss the Complaint ....................14

IV. CONCLUSION ....................15

**TABLE OF AUTHORITIES**

Cases

*Albert v. Carovano*,
851 F.2d 561, 572 (2d Cir. 1988) ....................5, 8

*Alexander v. City of New York*,
957 F. Supp. 2d 239, 249-50 (E.D.N.Y. 2013) ....................11

*Anderson v. Conboy*,
156 F.3d 167, 170 (2d Cir. 1998).................... 5, 6, 7

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) .................... 4

*Ayiloge v. City of New York*,
No. 00 CIV. 5051 (THK) 2002 WL 1424589, at *16 (S.D.N.Y. June 28, 2002) .................... 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007) .................... 4

*Burgis v. N.Y.C. Dep't of Sanitation*,
798 F.3d 63, 68 (2d Cir. 2015) ....................9

*Callahan v. Consol. Edison Co. New York*,
187 F. Supp. 2d 132, 138 (S.D.N.Y. 2002) ....................12

*Chimarev v. TD Waterhouse Inv'r Servs., Inc.*,
280 F. Supp. 2d 208, 224-25 (S.D.N.Y. 2003) ....................5

*Christiansen v. Omnicom Grp., Inc.*,
167 F. Supp. 3d 598, 617 (S.D.N.Y. 2016) ....................14

*Cloke-Browne v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*,
No. 10-CV-2249 LTS, 2011 WL 666187, at *10 (S.D.N.Y. Feb. 9, 2011) ....................12

*Coleman v. brokersXpress, LLC*,
No. 08 Civ. 5085, 2009 U.S. Dist. LEXIS 8329, at *9 (S.D.N.Y. Feb. 4, 2009) ....................10

*Dickerson v. State Farm Fire & Cas. Co.*,
No. 95 Civ. 10733, 1996 U.S. Dist. LEXIS 11289, at *7 (S.D.N.Y. Aug. 1, 1996) ....................8

*Dove v. Fordham Univ.*,
56 F. Supp. 2d 330, 338 (S.D.N.Y. 1999) ....................................................................8

*Farbstein v. Hicksville Pub. Library*,
323 F. Supp. 2d 414, 417 (E.D.N.Y. 2004) ....................................................................5

*Fouche v. St. Charles Hosp.*,
64 F. Supp. 3d 452, 457-58 (E.D.N.Y. 2014) ....................................................................11

*Gomez v. City of New York*,
No. 12–CV–6409 (RJS), 2014 WL 4058700, at *5 (S.D.N.Y. Aug. 14, 2014) ..........................11

*Grimes v. Fremont Gen. Corp.*,
933 F. Supp. 2d 584, 599 (S.D.N.Y. 2013) ....................................................................8

*Hayes v. Cablevision Sys. N.Y. City Corp.*,
07-CV-2438 RRM, 2012 WL 1106850, at *16 (E.D.N.Y. Mar. 31, 2012) ................................11

*Hicks v. Baines*,
593 F.3d 159, 164 (2d Cir. 2010) ....................................................................11

*Hicks v. IBM*,
44 F. Supp. 2d 593, 597 (S.D.N.Y. 1999) ....................................................................12

*Hussein v. Sheraton New York Hotel*,
100 F. Supp. 2d 203, 206 (S.D.N.Y. 2000) ....................................................................5

*Irizarry v. Catsimatidis*,
722 F.3d 99, 114-16 (2d Cir. 2013) ....................................................................13

*Littlejohn v. City of New York, et al.*,
795 F.3d 297, 306 (2d Cir. 2015) ....................................................................4, 9

*Lizardo v. Denny's, Inc.*,
270 F.3d 94, 104 (2d Cir. 2001) ....................................................................10

*Lundy v. Catholic Health Sys. of Long Island Inc.*,
711 F.3d 106 (2d Cir. 2013) ....................................................................4

NYC Commission on Human Rights,
https://www1.nyc.gov/site/fairhousing/renters/citizenship-status.page ......................................10

*Nadesan v. Citizens Fin. Group et al.*,
673 Fed. App'x 47, 49 (2d Cir. 2016) ....................................................................5

*Patane v. Clark*,
508 F.3d 106, 113 (2d Cir. 2007) ....................................................................................4

*Sai Qin Chen v. East Market Rest., Inc.*,
2015 WL 5730014, *7 (S.D.N.Y. Sept. 30, 2015) ..........................................................13

*Saint Francis Coll. v. Al-Khazraji*,
481 U.S. 604, 613 (1987) ..................................................................................................5

*Sanders v. Grenadier Realty, Inc.*,
No. 08 Civ. 3920, 2009 ....................................................................................................8

*Tracy v. NVR, Inc.*,
667 F Supp. 2d 244, 247 (W.D.N.Y. 2009) ....................................................................13

*United Mine Workers v. Gibbs*,
383 U.S. 715, 726, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966) .........................................14

*Vaughn v. City of New York*,
2010 WL 276926, at *10 (E.D.N.Y. May 24, 2010) .......................................6, 7, 11

*Vuona v. Merrill Lynch & Co.*,
919 F. Supp. 2d 359, 393 (S.D.N.Y. 2013) .....................................................................14

*Wilk v. VIP Health Care Servs., Inc.*,
No. 10-CV-5530, 2012 WL 560738, at *7 (E.D.N.Y. Feb. 21, 2012) ..........................13

*Yusuf v. Vassar Coll.*,
35 F.3d 709, 713 (2d Cir. 1994) ........................................................................................8

## I. PRELIMINARY STATEMENT

Defendants Coffeed Corp. ("Coffeed"), The Landing at New Leaf LLC ("New Leaf"), Coffeed at the Mount LLC ("Coffeed at the Mount"), Frank Raffaele ("Raffaele"), Catherine Mosomillo ("Mosomillo"), and David Barbag ("Barbag") (collectively, the "Coffeed Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint of plaintiff Robert Owens ("Plaintiff" or "Owens").

Owens, an American citizen, complains in this lawsuit of "citizenship status discrimination" pursuant to 42 U.S.C. § 1981 ("Section 1981") and the New York City Human Rights Law ("NYCHRL"). The crux of Owens's claim is that the Coffeed Defendants gave a portion of his work hours to a co-worker, Felipe, whom Owens alleges "upon information and belief" is not authorized to work in the United States. (Compl. ¶¶ 11, 27.) According to Owens, based on Felipe's alleged undocumented status, the Coffeed Defendants pay Felipe less – only $20 per hour, as opposed to the $25 per hour they pay Owens – and therefore assigned him to work two of Owens's shifts beginning in November 2017 and continuing until he filed the Complaint in May 2018. (*Id.* ¶ 48.)

Based on these allegations, Owens is not entitled to relief under Section 1981 or the NYCHRL as a matter of law. Section 1981 is not a broad-based anti-discrimination statute. It was enacted following the Civil War to provide redress for victims of invidious racial prejudice and has been expanded in the Second Circuit to prohibit discrimination based on *alienage* – not citizenship, national origin, immigration status, work authorization, or any other personal characteristic. Moreover, Section 1981 requires proof of *intentional, purposeful* discrimination against a plaintiff *because* he or she is a member of a protected class – not simply *in spite of* the

plaintiff's membership in such a class. Thus, even assuming that Owens's American citizenship entitles him to the protection of Section 1981 or the NYCHRL, the mere allegation that Coffeed's practice of scheduling a lesser-paid employee to work more hours than Owens is insufficient as a matter of law to obtain relief. Thus, the First and Second Causes of Action should be dismissed.

Owens's claims of retaliation under Section 1981 and the NYCHRL are also insufficient to withstand a motion to dismiss because Owens has not engaged in activity protected under either Section 1981 or the NYCHRL. Furthermore, while Owens claims that he complained to Coffeed CEO Frank Raffaele of citizenship discrimination in March 2018, Owens has not alleged any plausible allegations of a causal link between that internal complaint and any subsequent adverse employment actions taken by the Coffeed Defendants. (*Id.* ¶ 58.) As a result, Plaintiff's Third and Fourth Causes of Action also should be dismissed.

Finally, Owens's Fifth Cause of Action alleges that the Coffeed Defendants violated the New York Labor Law ("NYLL") by failing to provide him with a Wage Theft Prevention Act Notice within ten days of his hire and include the correct name of his employer on all of his wage statements. This tacked on claim should be dismissed at least as to Raffaele, Barbag, and Mosomillo because the Complaint fails to adequately allege that any of the individual defendants were "employers" under the NYLL.

The remainder of Plaintiff's claims are pursuant to state law. As such, the Coffeed Defendants respectfully request that the Court decline to exercise supplemental jurisdiction over the remaining claims and dismiss the Complaint in its entirety, with prejudice.

## II. PERTINENT ALLEGATIONS IN THE COMPLAINT

Owens has been employed by Coffeed since April 2016 as a Floor Manager at the New Leaf Restaurant and Bar (the "Restaurant") in Fort Tryon Park in Upper Manhattan. (Comp. ¶¶

13, 28, 34.) In his Complaint, he claims that his job duties include verifying the eligibility of new hires and assisting in processing paperwork for them to begin working. (*Id.* ¶ 35.) According to Owens, in performing such duties, he has observed occasions on which the documentation of other Coffeed employees has not appeared genuine. (*Id.* ¶¶ 37-38.)

Owens claims that on November 2, 2017, Mosomillo,[1] the Restaurant's Director of Events, informed him that she and Barbag, Coffeed's CFO, had met and agreed on a new work schedule that would give more than half of Owens's work hours to Felipe. (*Id.* ¶ 54.) Thus, Owens contends that from November 2, 2018, until he filed his Complaint on May 31, 2018,[2] "due to Felipe's status as a non-citizen who is not legally in the U.S.," (*id.* ¶ 48), the Coffeed Defendants assigned Felipe to work two of Owens's shifts per week at a lower rate of pay than they paid Owens ($20 per hour as opposed to $25 per hour); did not pay Felipe overtime; and allowed Felipe to receive a portion of the wait staff's tips. (*Id.* ¶ 48.) The Complaint further notes that Felipe works at the Restaurant as both a server and a manager, and receives an hourly wage and tips when he works as a server, and a higher wage when he works as a manager. (*Id.* ¶¶ 43-46.)

Plaintiff claims that he wrote Raffaele, Coffeed's CEO, on March 13, 2018 to complain about his hours being given to Felipe and that the practice constituted "citizenship discrimination." (*Id.* ¶ 58.) In response, Raffaele informed him that all of Coffeed's employees were legally in the United States, that Plaintiff's hours had been reduced because it was the Restaurant's slow season, and that Coffeed enjoyed having Plaintiff work for it and would look to restore his hours in April. (*Id.* ¶¶ 60, 63.) According to Owens, however, his hours were not restored at the time he filed the Complaint in May. (*Id.* ¶ 78.)

---

[1] According to the Complaint, Mosomillo was the Restaurant's General Manager from some time prior to April 2016 until September 2017, and currently serves as its Director of Events. (*Id.* ¶¶ 20, 21.)

[2] Notably, Owens also alleges that the same reduction of his hours in favor of Felipe occurred during the prior winter season from December 2016 to April 2017. (*Id.* ¶ 48.)

## III. LEGAL ARGUMENT

### A. THE APPLICABLE MOTION TO DISMISS STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To be plausible on its face, a complaint must plead "factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also, e.g.*, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013). When considering whether a complaint is plausible on its face, a court first must ferret out and disregard all legal conclusions, labels, formulaic recitations of elements and conclusory statements. *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 555. Then, it must determine whether the remaining factual allegations, if taken as true, set forth facts sufficient to allege each element of a claim and establish a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Owens must plead facts that give plausible support to a minimal inference of discriminatory motivation. *Littlejohn v. City of New York, et al.*, 795 F.3d 297, 306 (2d Cir. 2015). Furthermore, the Complaint must give the Coffeed Defendants fair notice of "what the plaintiff's claim is and the grounds upon which it rests." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (affirming the Rule 12(b)(6) dismissal of a discrimination claim).

Applying this standard to the allegations presented in the Complaint, Owens fails to state any legally cognizable claims for citizenship discrimination or retaliation against any of the Coffeed Defendants, and moreover, fails to state a plausible claim under the NYLL against defendants Barbag, Mosomillo, and Raffaele (collectively, the "Individual Defendants"). As a result, those claims should be dismissed.

## B. PLAINTIFF DOES NOT STATE A PLAUSIBLE CLAIM UNDER SECTION 1981

### *1. Section 1981 Does Not Prohibit Discrimination Based on American Citizenship.*

Section 1981 does not prohibit discrimination based on American citizenship. It is well-settled that Section 1981 forbids discrimination based on race in the making and enforcement of contracts, including racial discrimination founded on ancestry or ethnic characteristics. *See Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998); *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) ("Section 1981 was intended to combat racial or ethnic discrimination, nothing more."); *Hussein v. Sheraton New York Hotel*, 100 F. Supp. 2d 203, 206 (S.D.N.Y. 2000) ("Section 1981's prohibition against racial discrimination has only been expanded to include discrimination based on ancestry or ethnic characteristics."; dismissing claim because Section 1981 does not prohibit discrimination based on employment categorization). It has similarly been recognized that Section 1981 does *not* prohibit discrimination based on gender, religion, age, disability, or national origin. *Anderson*, 156 F.3d at 170; *see also, e.g., Nadesan v. Citizens Fin. Group et al.*, 673 Fed. App'x 47, 49 (2d Cir. 2016) (summary order) ("Section 1981 provides a cause of action for discrimination on the basis of race, which includes 'ancestry or ethnic characteristics,' but not for discrimination based 'solely on the place or nation of [the plaintiff's] origin'"; affirming dismissal of 1981 claims where plaintiff alleged that he was treated differently than his co-workers based on the fact that he was a "Singapore National") (quoting *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987)); *Chimarev v. TD Waterhouse Inv'r Servs., Inc.*, 280 F. Supp. 2d 208, 224-25 (S.D.N.Y. 2003), *aff'd*, 99 Fed. App'x 259 (2d Cir. 2004) ("Because Chimarev's claims exclusively relate to discrimination based on national origin, he cannot state a claim under section 1981."); *Farbstein*

*v. Hicksville Pub. Library*, 323 F. Supp. 2d 414, 417 (E.D.N.Y. 2004) (dismissing § 1981 claim based on religious discrimination).

In *Anderson v. Conboy*, 156 F.3d 167 (2d Cir. 1998), the Second Circuit Court of Appeals held that, in addition to discrimination based on race, Section 1981 bars "alienage discrimination." *Id.* at 169. In *Anderson*, a Jamaican citizen who had immigrated to the United States filed suit against his union for "discharging him because he was not a citizen of the United States." *Id.* at 168. The *Anderson* court undertook a comprehensive review of the historic roots and purpose of Section 1981, including Congress's expressed legislative goal of providing recourse against the purposeful discrimination and bigotry being directed against persons merely because of their race or their status as non-U.S. citizens. *Id.* at 170-80. In holding that Section 1981 prohibits alienage discrimination in addition to race discrimination, the court noted that there was evidence of a broader Congressional intent to extend Section 1981's protection to all "'***foreigners, not citizens***.'" *Id.* at 173-74 (emphasis added). The *Anderson* court thus cautioned that Section 1981 prohibits only these two specific categories of discriminatory conduct: (1) discrimination directed against someone because of race; and (2) discrimination directed against "aliens" because of a *lack* of U.S. citizenship. *Id.* at 170.

Here, Owens's claim of citizenship discrimination is premised on his status as an American citizen, not his lack of citizenship. (Compl. ¶¶ 11, 27.) Specifically, Owens challenges the Coffeed Defendants for allegedly scheduling his co-worker Felipe for more hours that he, claiming that the Coffeed Defendants were able to pay Felipe less money per hour than Owens solely because Felipe is not legally working in the United States and is "exploitable." (*Id.* ¶¶ 48, 58.)

In *Vaughn v. City of New York,* the court flatly rejected the argument that a U.S. citizen could bring a discrimination claim under Section 1981, finding that only the two non-citizen

plaintiffs in that action could bring Section 1981 claims, and dismissing the Section 1981 claims of the remaining plaintiffs. *See Vaughn v. City of New York*, 2010 WL 276926, at *10 (E.D.N.Y. May 24, 2010). Noting the "limited reach" of Section 1981, the *Vaughn* court reasoned that Section 1981 "appl[ies] to discrimination on the basis of alienage, *i.e.*, *non*-U.S. citizenship." *Id.* (emphasis added) (citing *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998)):

> It is critical to note that alienage discrimination is discrimination on the basis of citizenship status, not immigrant status. Discrimination on the basis of a person's status as an immigrant to the United States is not alienage discrimination unless it is also motivated by the ***lack*** of U.S. citizenship.

*Id.* (emphasis added). Similarly, in *Ayiloge v. City of New York*, the court recognized that an alien is defined as "[a]ny person *not* a citizen or national of the United States," and that alienage discrimination thus "involves discriminating against an individual on the basis of their *foreign* citizenship." *Ayiloge v. City of New York*, No. 00 CIV. 5051 (THK), 2002 WL 1424589, at *16 (S.D.N.Y. June 28, 2002) (emphasis added) (quoting Black's Law Dictionary, 6th ed. 1990).[3]

Because *Anderson* and its progeny make clear that Section 1981 only applies to "aliens," i.e., *non-citizens*, Owens's claim fails. Thus, Plaintiff's First Cause of Action must be dismissed.

---

[3] *See also Saad v. Baltimore Life Ins. Co.*, 47 Fed. App'x 228, 232 (4th Cir. 2002) ("Section 1981 bars discrimination on the basis of race and ethnicity, or lack of citizenship."); *Nagy v. Baltimore Life Ins. Co.*, 215 F.3d 1320 (Table), 2000 WL 718391, at *6 n. 2 (4th Cir. 2000) (no prohibition if "based on applicants' place of citizenship, not applicants' non-citizenship"); *Bhandari v. First Nat'l Bank of Commerce*, 829 F.2d 1343, 1344 (5th Cir. 1987) (prohibits "[r]acial and citizenship distinctions" and the denial of credit because the plaintiff, "although a lawful permanent resident of the United States, [was] not a citizen"); *Andrews v. The Home Depot, Inc.*, No. 03-CV-5200 (DMC), 2010 WL 338063, at *2 (D.N.J., Jan. 26, 2010) (encompasses "discrimination based on alienage (i.e., citizenship status)"); *Zhang v. Ma Labs, Inc.*, No. CO4-01595 HRL 2005 WL 889724, at *2, 4 (N.D. Cal., April 15, 2005) (citing *Anderson*, Section 1981 prohibits "discrimination against non-citizens," dismissing action because no "discriminatory intent... to pay plaintiff less because he was an alien."); *Oparaji v. New York City Dep't of Educ.*, No. 03 CV 4105NGVVP, 2005 WL 1398072, at *9 (E.D.N.Y. June 14, 2005), *aff'd*, 172 Fed. App'x 352 (2d Cir. 2006) (dismissing plaintiff's 1981 claim where plaintiff was a naturalized U.S. citizen).

2. *Plaintiff's Section 1981 Claim Also Fails Because He Has Not Plausibly Alleged Purposeful Discrimination Based on His Status as an American Citizen.*

Even if Section 1981 *does* apply to American citizens, Owens's claim nonetheless fails because he alleges no facts plausibly suggesting that any of the Coffeed Defendants *purposefully* discriminated against him based on his American citizenship. *See Albert*, 851 F.2d at 571 (citations omitted) ("Essential to an action under Section 1981 are allegations that the defendants' acts were purposefully discriminatory and racially motivated.").

"[T]o survive a motion to dismiss, [a Section 1981] plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994) (dismissing Section 1981 claim where plaintiff failed to identify specific discriminatory intent); *see also Sanders v. Grenadier Realty, Inc.*, No. 08 Civ. 3920, 2009 U.S. Dist. LEXIS 38356, at *5 (S.D.N.Y. May 6, 2009) (dismissing complaint that "fail[ed] to specifically allege intentional discrimination based upon race and offer[ed] nothing more than conclusory allegations"), *aff'd*, 367 Fed. App'x 173 (2d Cir. 2010). "Fact-specific allegations of a causal link between the defendant's actions and the plaintiff's [protected status] are required." *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 338 (S.D.N.Y. 1999), *aff'd sub nom.*, 210 F.3d 354 (2d Cir. 2000); *see also Grimes v. Fremont Gen. Corp.*, 933 F. Supp. 2d 584, 599 (S.D.N.Y. 2013) (citing *Dickerson v. State Farm Fire & Cas. Co.*, No. 95 Civ. 10733, 1996 U.S. Dist. LEXIS 11289, at *7 (S.D.N.Y. Aug. 1, 1996)) ("It is not enough merely to assert that the defendant took adverse action against the plaintiff, and that the action was the product of racial animus[;t]he complaint must allege specific facts supporting both the existence of the racial animus and the inference of a link between the adverse treatment and the racial animus.")) "An inference of discrimination can arise

from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312.

Here, the Complaint pleads no facts to support the plausible inference that the Coffeed Defendants *intended* to discriminate against Owens on the basis of his status as an American citizen. The Complaint contains no allegations that any "invidious" comments were made by any of the Coffeed Defendants regarding either Plaintiff's American citizenship or Felipe's alleged lack thereof. Nor it include any allegations pertaining to Plaintiff's qualifications as compared to that of Felipe which could plausibly establish Felipe as a comparator. *E.g.*, *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 1202 (2016) (affirming dismissal of Section 1981 discrimination claim where plaintiffs did not provide "meaningful specifics of the alleged difference in qualifications" between plaintiffs and allegedly less qualified white employees who were promoted ahead of plaintiffs). Rather, the Complaint asks the court to infer that Plaintiff was discriminated against based on his U.S. citizenship simply because Felipe was paid $20 an hour, while Owens was paid $25 per hour; shared in the tip pool with the wait staff (of which he was also apart when he was working as a server); and was not paid overtime.[4] (Compl. ¶ 48.) Given that Felipe's $20 per hour wage far exceeds the minimum wage, the allegations do not plausibly support the inference that Felipe was paid less – and therefore asked to work more – simply because of his purported vulnerability as an undocumented worker, and not for some other reason. Indeed, the Complaint itself plausibly suggests that the *true* reason for the Coffeed Defendants decision to reduce Owens's work hours was that it was the Restaurant's slow

[4] The Coffeed Defendants dispute these allegations, but will accept them to be true solely for the purpose of this Motion to Dismiss.

season, as made apparent by Owens's allegation that the same thing happened the prior year during the same time frame. (Compl. ¶ 48.)

At bottom, Owens has "done little more than cite to [his] mistreatment and ask the court to conclude that it must have been related to [his American citizenship]." *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001); *see also Coleman v. brokersXpress, LLC,* No. 08 Civ. 5085, 2009 U.S. Dist. LEXIS 8329, at *9 (S.D.N.Y. Feb. 4, 2009) (dismissing complaint where plaintiff "allege[d] little more than that he is Jewish [] and that he was terminated"), *aff'd*, 375 Fed. App'x 136 (2d Cir. 2010). Because Owens has failed to plead the elements required by Section 1981, his claim must be dismissed.

## C. OWENS FAILS TO STATE A PLAUSIBLE CLAIM OF CITIZENSHIP DISCRIMINATION UNDER THE NYCHRL

Owens similarly fails to state a claim for citizenship discrimination pursuant to the NYCHRL. Although the NYCHRL includes "alienage or citizenship status" among its protected classes, *see* NYC Admin. Code 8-107(1)(a), as with Section 1981, the statute plainly is not intended to protect those who *are* American citizens, but rather those who are *not*. *See* NYC Commission on Human Rights, https://www1.nyc.gov/site/fairhousing/renters/citizenship-status.page (last accessed Sept. 3, 2018) (noting that "alienage or citizenship status" as defined in the NYCHRL "means the immigration status or citizenship of any person *who is not* a citizen or national of the United States") (emphasis added). Moreover, as discussed *supra* in connection with his Section 1981 discrimination claim, Plaintiff has alleged no facts which plausibly suggest that he was discriminated against in the basis of his American citizenship. *See Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 258 (E.D.N.Y. 2012) ("[A] plaintiff [alleging NYCHRL claims] must still link the adverse employment action to a discriminatory motivation. Where a plaintiff cannot do so, her claims fail."); *Ben-Levy v. Bloomberg, L.P.*, No 11-CV- 1554, 2012 WL

2477685, at *7 (S.D.N.Y. June 26, 2012) (lack of discriminatory comments undermines inference of discrimination). Thus, Plaintiff's NYCHRL discrimination claim also should be dismissed.

**D. <u>OWENS FAILS TO ALLEGE PLAUSIBLE CLAIMS OF RETALIATION</u>**

Plaintiff's claims for retaliation under Section 1981 and the NYCHRL fare no better. In order to establish a claim for retaliation under 42 U.S.C. § 1981, a plaintiff must allege "'(1) participation in a protected activity; (2) [defendant's knowledge] of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Fouche v. St. Charles Hosp.*, 64 F. Supp. 3d 452, 457-58 (E.D.N.Y. 2014) (granting motion to dismiss where plaintiff made a race neutral complaint to her supervisor); *Gomez v. City of New York*, No. 12–CV–6409 (RJS), 2014 WL 4058700, at *5 (S.D.N.Y. Aug. 14, 2014) (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)) (citations and internal quotation marks omitted); *Alexander v. City of New York*, 957 F. Supp. 2d 239, 249-50 (E.D.N.Y. 2013) (dismissing Section 1981 retaliation claim where plaintiff failed to allege adverse employment action).

Owens's Section 1981 retaliation claim fails at the outset because, as described *supra* at Section III(A)(1), he failed to engage in any activity protected under that statute. *See Hayes v. Cablevision Sys. N.Y. City Corp.*, 07-CV-2438 RRM, 2012 WL 1106850, at *16 (E.D.N.Y. Mar. 31, 2012) (internal quotation marks omitted) ("The first prong of the *prima facie* standard requires plaintiff to have taken action … to protest or oppose . . . discrimination [prohibited by § 1981]."); *Vaughn*, 2010 WL 276926, at *17 ("Because Henry did not engage in activity on the basis of a class protected by § 1981, there can be no valid § 1981 retaliation claim.").

The Complaint also fails to plausibly allege any causal connection between any adverse employment action taken by any of the Coffeed Defendants and Owens's March 13, 2018

complaint to Raffaele. Indeed, Owens alleges that the Coffeed Defendants *already* had reduced his hours prior to his complaint to Raffaele, so it therefore defies logic to conclude that the mere continuation of that schedule was retaliatory. *See Callahan v. Consol. Edison Co. New York*, 187 F. Supp. 2d 132, 138 (S.D.N.Y. 2002) (dismissing Section 1981 and NYCHRL retaliation claim for failure to allege a plausible causal connection between plaintiff's complaints and any adverse employment action). As a result, Plaintiff's Third and Fourth Causes of Action must be dismissed.

### E. OWENS FAILS TO ALLEGE FACTS TO STATE A PLAUSIBLE SECTION 1981 CLAIM AGAINST THE INDIVIDUAL DEFENDANTS

Even if the Court does not dismiss Plaintiff's discrimination and retaliation claims against the Coffeed corporate entities, the Section 1981 claims against the Individual Defendants should otherwise be dismissed. Under Section 1981, "individuals should be held liable . . . only when they are essentially one and the same with the employer; that is when they have the capacity to make and enforce the contract between the employer and the employee." *Hicks v. IBM*, 44 F. Supp. 2d 593, 597 (S.D.N.Y. 1999). Owens has not plausibly alleged that any of the Individual Defendants has the capacity to make and enforce contracts with him, and, thus, individual liability under Section 1981 is inappropriate. *See Cloke-Browne v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 10-CV-2249 LTS, 2011 WL 666187, at *9 (S.D.N.Y. Feb. 9, 2011) (dismissing national origin claim against individual defendant where, aside from an allegation that the individual had given plaintiff a lower performance rating than he deserved, plaintiff failed to proffer facts to suggest that the individual defendant participated in discriminatory conduct prohibited by the employer).

### F. PLAINTIFF FAILS TO PLAUSIBLY ALLEGE THAT THE INDIVIDUAL DEFENDANTS VIOLATED THE NYLL

The Complaint alleges that the Coffeed Defendants as a group did not provide Owens with proper notice of his wages within ten days of the commencement of his employment and failed to

include the correct name of his employer on certain of his wage statements, in violation of Section 195.1(a) and 195(3) of the NYLL. (Compl. ¶ 134.) Plaintiff's claims against the Individual Defendants in this regard must be dismissed as they fail to satisfy the most basic of pleading standards.

Although "individual officers, directors, and executives of an entity may constitute 'employers' of an employee," in order to state viable claims under the FLSA or NYLL, a plaintiff must allege that an individual defendant actually "possess[es] the power to control him or her." *See, e.g.*, *Wilk v. VIP Health Care Servs., Inc.*, No. 10-CV-5530, 2012 WL 560738, at *7 (E.D.N.Y. Feb. 21, 2012); *see also Irizarry v. Catsimatidis*, 722 F.3d 99, 114-16 (2d Cir. 2013) (explaining that the factors required to state a claim for individual liability are the same as those for alleging an entity is an employer, and include whether the defendant has the power to hire and fire employees, whether he supervised and controlled employees' work schedules or conditions of employment, whether he determined the rate and method of payment to employees and whether he maintained employment records).

Indeed, the cases in this Circuit allowing claims of individual liability under the NYLL to go forward almost exclusively "involve allegations that an individual had unilateral control over the material aspects of the conditions of employment and was, therefore, an employer within the meaning of the FLSA and the [NYLL]." *Sai Qin Chen v. East Market Rest., Inc.*, 2015 WL 5730014, at *7 (S.D.N.Y. Sept. 30, 2015) (collecting cases); *Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244, 247 (W.D.N.Y. 2009) (rejecting "mere boilerplate allegations" of individual liability).

Here, the Complaint does not contain any plausible allegations that could tie Barbag, Mosomillo, or Raffaele to the alleged failure to timely issue Owens's wage theft notice or to include the proper legal name of his employer on certain of his wage statements. Rather, Plaintiff,

in boilerplate fashion, parrots the elements set forth in cases that have permitted claims against individual defendants to proceed. For example, the Complaint alleges that "upon information and belief" in early 2018 – after the alleged NYLL violations occurred – Mosomillo acquired an ownership interest in the Restaurant. (Compl. ¶ 22.) Plaintiff also conclusory alleges that "upon information and belief" Barbag receives a percentage of the Restaurant's revenues or profits. (*Id.* ¶ 26.) Similarly, Plaintiff maintains that Raffaele "oversaw" Mosomillo and Barbag's management of the Restaurant. (*Id.* ¶ 18.) These allegations are devoid of any specificity as to what power, if Barbag, Raffaele, or Mosomillo had with respect to issuing Plaintiff's wage notices or statements, or what, if any, personal knowledge Plaintiff has regarding their alleged actions. As a result, Plaintiff's NYLL claim must be dismissed as to the Individual Defendants.

## G. THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S REMAINING CLAIMS AND DISMISS THE COMPLAINT

If this Court dismisses the Plaintiff's federal causes of action, it should decline to exercise supplemental jurisdiction over his remaining state and/or local law causes of action, if any. A district court "may decline to exercise supplemental jurisdiction over a claim . . . if [it] has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). In most circumstances, a district court should decline supplemental jurisdiction if all federal claims have been dismissed at the pleading stage. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Christiansen v. Omnicom Grp., Inc.*, 167 F. Supp. 3d 598, 617 (S.D.N.Y. 2016) (citing *Vuona v. Merrill Lynch & Co.*, 919 F. Supp. 2d

359, 393 (S.D.N.Y. 2013)) (disposing of a plaintiff's Title VII and NYSHRL claims because an identical standard applies, but declining to exercise supplemental jurisdiction over the differently analyzed NYCHRL claims)).

Should the Court dismiss Plaintiff's federal law claims, the early stage of the litigation and the multiple issues of state and city law implicated by Plaintiff's remaining claims strongly suggest that the Court should decline to exercise supplemental jurisdiction over these non-federal causes of action.

## IV. CONCLUSION

For all the foregoing reasons, the Coffeed Defendants respectfully request that the Court dismiss Complaint in its entirety, with prejudice. The Coffeed Defendants further respectfully request that the Court award such other and further relief as it deems just and proper, including reimbursement of their attorneys' fees and costs in connection with this motion.

Dated: New York, New York
September 6, 2018

**GOLDBERG SEGALLA LLP**

/s/

ALLISON E. IANNI, Esq.
*Attorneys for Defendants*
711 Third Ave., Suite 1900
New York, New York 10017
Ph. 516-281-9840 – Fax: 516-281-9801
E-mail: aianni@goldbergsegalla.com

TO: LAW OFFICES OF SCOTT A. LUCAS
*Attorneys for Plaintiff*
250 Park Avenue, 20th Floor
New York, New York 10177